Allen, J.
The statute concerning mills provides, that the clerk shall issue a writ, to he directed to the sheriff, commanding him to summon and impannel twelve fit persons. In this case, the person applying for leave to build the mill was the proprietor of the lands on both sides of the stream. The party contesting owned lands above, which were overflowed. The statute does not require that notice shall he given to him; because, until the inquisition is taken, it cannot certainly appear that he will he injured by the erection of the dam. He is, therefore, no party to the first proceedings, nor can he regularly make himself a party until the return of the inquisition. On the return of the inquisition, Matthews appeared, and moved to quash it, because two of the jurors had served on a former inquest respectiug the same dam; and, in support of his motion, he shewed by the record, that the jury in the last inquest were required to act on the same matter involved in the first. Was this a good cause of principal challenge, which left no discretion on the part of the court ? and if so, was it made in time ?
A principal cause of challenge is “so called, because if it is found true, it standeth sufficient of itself, without leaving any thing to the conscience or discretion of the triorsand it is a principal cause of challenge propter affectum, “if the juror has given a verdict for *234 the same cause.” Co. Litt. 156. h. 157. h. 21 Yin. Abr. Trial. A. d. 3. p. 252, 3. A challenge concluding to the favour, when either party cannot take a principal challenge, must be left to the conscience and discretion of the triors upon the evidence. The authorities make it perfectly clear, that wherever a principal cause of challenge exists, all discretion is at an end. The juror must be set aside ex debito justitice ; and all the books concur in declaring, that if the juror has given a verdict for the same cause, it is a principal cause of challenge.
As a general rule, such challenge must be made before the juror is sworn. But this rule must be confined to cases, where there is a party to the record, who can challenge before the juror is sworn. The proceeding, so far as the party objecting here was concerned, was, at the time the jury was sworn, entirely ex parte; and even if we could suppose he was present, there was no tribunal before which he could take the challenge. The sheriff, in holding an inquisition, acts ministerially, and no exception could be taken to his decision, if he improperly overruled the challenge. The earliest opportunity which offered to take the exception, was upon the return of the inquisition.
It is contended, however, that this varies from ordinary cases of trials before the courts, where the verdict of the jury is conclusive as to the facts: that the inquisition here does not conclude the parties, but the court, all the circumstances being weighed, may give or refuse the leave to erect the dam. This is correct to some extent. The court, notwithstanding a favourable inquisition, may refuse the leave. But the inquisition is the foundation of all the subsequent proceedings. If the inquisition finds that the health of the neighbours will be annoyed, or the mansion house &c. of any proprietor be overflowed, the court shall not give leave to build the mill: so far, then, the petitioner would be concluded. *235 Again, the party obtaining the leave is to pay the damages whioh will be done by overflowing the lands above or below. If the damages assessed be excessive or inadequate, the court may set aside the inquisition; but it would not be pretended, that the court could substitute itself for the jury, and proceed to assess the damages; upon that question, the finding is at last conclusive ; for the damages to be paid must be assessed by a jury. In these important particulars, the parties are concluded by the inquisition. And in reference to all other matters submitted to their enquiry, the inquisition, regularly taken, will have an imposing eflect upon the court. The mere opinions of witnesses, giving the subject a slight examination, would weigh but little in comparison with an inquisition taken on the spot, by jurors charged with the particular enquiry, and acting under the responsibility of an oath.
Reasons of public policy too, so far from sanctioning any relaxation of the rules of law intended to secure in all cases impartial jurors, would seem, in this particular instance, to demand a rigid adherence to them. A court of record, with the parties and their counsel before it, can more easily guard the purity of the jury trial. But these proceedings take place in the country, with no person present to watch over the conduct of the party or of the jury. And yet important rights are absolutely decided or materially influenced by their verdict.
It may be said, that it appears here that the former jury did not contemplate the reflux of the water so far as to injure the appellee Matthews, and that, as to this question, the first jury had not pronounced an opinion. I doubt whether it is competent, on this record, to en-quire into that matter. The second writ was not to en-quire merely into the damages which were sustained by Matthews. The jury was required to respond to the same enquiries, to which the jury had responded on the former inquest. Matthews was, by the last inquisition, *236 shewn to be a party seriously affected by the dam, and was entitled to an inquisition taken by disinterested jurors, and to their finding upon all the questions submitted to them. The proceedings in chancery, made a part of the record in the cause, shew that he objected, because the proposed dam would seriously annoy the health of his family. Upon this point two of the jurors had prejudged the case, and the inquisition returned by them and then fellows may have determined the judgment of the court to which it was submitted.
I think, that the inquisition ought to have been quashed, and approve the judgment of the circuit superior court, reversing that of the county court, for refusing to quash it.
Stanard, J.
(after stating the proceedings on both writs of ad quod damnum, and in the suit in chancery, with great precision) said—The question in this case, which has chiefly engrossed the attention of counsel, is, whether the fact that two of the jurors impanneled on the writ of ad quod damnum of March 1838, were of the inquest upon the writ of January 1837, vitiated the second inquisition ? Which involves an enquiry, in the first place, into the general principle which should govern the decision of the question; and then, how far the particular case presents a fit occasion for the application of such general principle.
Does the law of challenge apply to a jury making inquisition in a mill case ? so that every objection, which can be urged as a principal cause of challenge to a juror about to be charged with the trial of an issue between litigant parties, may be urged as a disqualification of a juror summoned upon such an inquest, and if such an objection be shewn to exist in fact, the inquisition is in law vitiated, and ought to be quashed. The counsel for the defendant in error contends for the affirmative; and if' he be right, a general principle is supplied for the *237 decision of llie question in controversy. My opinion is, that the proposition is not warranted by the principles of law.
The principal causes of challenge are indicated by, or deduced from, the terms of the venire facias, which commands a summons “of good and lawful men, by whom the truth of the matter may be better known, and who are nowise of kin either to the plaintiff or the defendant;” which words include all causes of objection for partiality or incapacity, consanguinity or affinity; and by force of them, it is a principal cause of challenge to a juror, that he has tried the same issue, and has declared his opinion upon the matter in issue. 3 Bac. Abr. Jury. E. 5. p. 756. Now, no such words are in the Avrit of ad quod danmum. The right of challenge, Avhere it exists, must be exercised before the jury shall be sworn, and if not so exercised, the objection is unavailing to set aside the verdict. The defendant’s counsel was, therefore, obliged to admit, that there is no right of challenge to jurors called upon an inquest in a mill case; for if it existed, it has been lost, in the present case, by the failure of the party to make the challenge before the inquisition was made. Why has not the law provided, for a challenge in such a case ? The reason may be found in the nature of the proceeding. It is not a proceeding inter partes; it is not final or definitively binding ; it is only initiative. It is not (technically speaking) a trial, but only a precautionary measure, which the policy of the law requires, before the case, as it affects individual rights, can be subjected to a judicial decision binding those rights. It has a much closer analogy to the inquest by a grand jury, than the trial by a venire; and my researches have been fruitless to find a single decision quashing, or even an attempt made to quash, an indictment, on the ground that some of the grand jurors had expressed an opinion on the matter of the indictment, or Avould have been liable to *238 challenge, if they had been called on the venire, for one of the many causes of principal challenge that might affeet their perfect indifferency. There are cases in which, though no formal issue be joined, yet the finding of the jury not being in its nature for information, or merely introductive of a litigation between individuals, but partaking more of the nature of a trial which may conclusively bind the rights of the parties, the law allows a challenge ; as a writ to enquire of waste, or a proprietate probanda. Harg. Co. Litt. 158. b. note 3. In cases in which the challenge is excluded (such as the case under consideration confessedly is) the law manifestly proceeds on the ground that public justice does not require, and public convenience forbids, that the privilege should be allowed. And whenever it is allowed, it must be exercised before trial, or the benefit of it is lost. To permit the challenge for cause to be used as the sole ground on which the inquisition shall be quashed, would produce the gross and palpable incongruity of making such cause more available to a party to whom the right of challenge is denied, and in respect to a proceeding by which nothing is finally decided, than it is to a party to whom the challenge is allowed, and in a proceeding acting directly on, and determining, the rights of the parties. It would not only introduce this incongruity in the law, but it would destroy equality and mutuality of right in the parties. A party apprised that a juror has expressed some opinion on some one of the several questions to which the inquisition must respond, may attend the execution of the writ of ad quod damnum, keep his information to himself, forbear to intimate to the other party, or to the sheriff, the objection to the juror, and silently acquiesce in the impanneling him on the inquest ; and then, if the inquisition accord with his views, he may suppress the objection; or if it should be made known, it would be unavailing to the other party, since he could not complain with effect, that the juror had, *239 before he was impanneled, expressed opinions favourable to his cause. Such results as these are not accidental in a particular case, but the invariable effect of the joint operation of absence of right (and consequently of duty) to challenge, and of the right to use the cause of challenge as peremptory cause to quash the inquisition. In my opinion, such a right would be in direct conflict with the analogies, reason and consistency, of the law; and is not sustained by any one decision, or even dictum, that my researches have brought under my notice.
While I am undoubtingly of opinion, that the existence of a cause of challenge, not affecting the qualifications which the writ requires the jurors to possess, namely the qualifications involved in the description of “good and lawful men freeholders of the bailiwick,” does not necessarily vitiate the inquisition, I am equally clear, that any such cause may be properly brought under the notice of the court, on the main question, whether leave shall be granted to build the mill and dam, or not: that it will, then, be entitled to more or less weight, as it may be affected by the circumstances of the case, and other matters that may be introduced in evidence ; and that, thus weighed, if there should appear just cause to believe that justice has not been done by the inquisition, the court may quash it, and award another, or, in a proper case, refuse the leave sought. This, however, would be an appeal to the court, in the nature of a motion for a new trial; in deciding which, all the evidence in and circumstances of the case should be weighed, and the decision made according to the sound discretion of the court. Estimating the objection to the inquisition that one or more of the jury had been of a jury which made a former inquisition, at its true value, as on a motion for a new trial, it would not of itself be sufficient cause for quashing the inquisition, and directing a melius inquirendum. All the matters found by the inquisition are open to the investigation of the *240 court, on the testimony and the opinions of witnesses; and from these sources, cause should be manifested to the court, to believe, or at least to suspect, that the. inquisition was imputable to some bias or prepossession of the jurors or of some of them, in order to justify the court in quashing it. Four matters are specially submitted to the enquiry of the jury: two of them interesting to the community at large, namely, whether fish of passage or ordinary navigation will be obstructed by the dam, and whether the health of the neighbourhood will be annoyed by the stagnation of the waters; and two affecting the rights of individuals, viz. what lands will be overflowed, or other damage done, and then the value of such lands, and the amount of such other damage. If the party complaining of the inquisition, can adduce no proof to impeach the opinion of the jury on these enquiries, what ground can there be for suspecting that the inquisition was in the slightest degree influenced by any improper bias of the jurors ? and without such ground, what good reason can there be to grant a new trial ? In a case where good cause of challenge existed, and the right of challenge was not exercised because the cause was unknown at the time the jury was impanneled, I doubt not it may be brought to the notice of the court upon a motion for a new trial, and in a doubtful case, it may turn the scale. But surely, if the case were free of all reasonable doubt, and the verdict clearly warranted by the evidence, the court ought not to set it aside, because there was cause of challenge, unknown, and therefore not urged, when the jury was irnpa.nnp.1erl. The absence of all proof to bring in question the judgment of the jury, must leave the objection of presumed bias utterly powerless,' by reason of the cogent implication it affords that such presumed bias had no effect. In this case, no effort was made to shew, and no circumstance appears even tending to the conclusion, that the inquisition was in the slightest degree affected by any previous bias of any of the jurors.
*241 The efficacy of the objection to the jurors, addressed to the sound discretion of the court, insulated from, or coupled with, evidence tending to vindicate, or to impeach their inquisition, would depend in some degree on the conduct of the party objecting. If he was not present at the inquest, or if he had no information of the fact till after the inquisition was made, a readier audience would be given to the objection, and more weight allowed to it. But if he was present, and had full notice of the ground of objection to the jurors summoned on the inquest, and forbore to intimate it to the officer or to the juror, the objection, thus withheld at the proper time, would, when afterwards urged to the court, be entitled to very little if any weight. Such was the case here. Matthews was well apprised of the first inquisition, for he exhibited it with his bill in chancery; and (as Hunter in his answer to the bill alleges) he was present when 'the second inquisition was made : and though he had no right of challenge to the jurors, he had full opportunity to know, and to make known, the ground of objection, and doubtless would have urged it, if he had supposed that the jurors had imbibed opinions, from their participation in the former inquisition, which would obstruct their exercise of an impartial judgment in making the latter.
But, if it were conceded, that the existence of a principal cause of challenge to one or more of the jurors making such an inquisition, should be as effectual to sustain a motion to quash it, as it would be to exclude a juror returned on a venire facias, I should still think the judgment of the circuit superior court in this case erroneous. If the right to quash be coextensive with the right to challenge, then its exercise should be subjected to a like limitation: as the right to challenge must be exercised in limine, so soon as the occasion to do so offers, such should be the limitation on the right to quash. Now here, the opportunity offered, when *242 upon the return of the second inquisition Matthews appeared, and entered himself defendant; and then, instead of moving to quash, he asked and obtained a continuance. Furthermore, in the finding of the first inquisition, there was, in truth, no prejudication of the matters involved in the second, and then brought into controversy. The material enquiries on the second inquest, were the quantity of land which would be overflowed by the mill pond made by the dam, and the effect upon the health of the neighbourhood likely to result from such stagnation of the waters. Now, upon these enquiries, the first inquisition left the minds of the jurors who found it, wholly free from any possible bias hostile to an impartial response: for on that occasion, the jury, without making an actual level, but merely on conjecture, supposed that the. water would flow back to a certain distance short of the land of Matthews. The mistakein that conjecture, or the having proceeded on v,'^^qpqjectlcii^, could nowise bias the jurors, in ascerl'taining the^ejWmity of land that was overflowed by the ¡mill -yqndy aftar the actual erection of the dam had shewn the ehdi^t °f it,‘or in estimating the damage. If Myífíiqio.f Jbad fought an action for the injury, it would not, in mjMrptfrion, have been a principal cause of challengek'o* one of the venire in such an action, that he was one of the jury that found the first inquisition. And the opinion that a dam, which (it was supposed) would not cause any land to be overflowed, would not cause any annoyance to the health of the neighbourhood, did not interfere at all with the exercise of an unbiassed judgment as to the effect of a mill pond which (it was ascertained) would overflow many acres.
The judgment of the circuit superior court has been vindicated by the counsel for the defendant in error on another ground: that, as Hunter had, by the leave of court to erect his mills and mill dam granted upon the first inquisition, title to erect his dam at the same place, *243 it was improper, or at least supererogatory, to sue out another writ of ad quod damnum. If it were open to the defendant to occupy such ground, it is not perceived, that it would be an adequate foundation for the judgment quashing the second inquisition. But I think it manifest that he cannot do so. He denied the validity of Hunter’s title to raise a dam twenty-four or even twenty-two feet high, or any dam that would overflow his land; and his objection to the title was so far judicially sustained, as to procure for him an order from the judge of the circuit superior court, that the dam should be so reduced as that it should no longer cause the land of Matthews to be overflowed, and that, unless it was so reduced by Hunter, he should be restrained from using the water to work his mills; and the sheriff was charged to enforce the restraint. It was when that order was in full force, and (it is fairly to be presumed) after the dam had been accordingly reduced twenty-two feet, that the applicatior Hunter for the new writ of ad quod i plicant contemplating the erection of feet high. Submission to the order of tlfc circuit superior court would reduce the dam below twer, the application for the new writ implied^ been such submission to that order. MatthMis denied that Hunter had title to a dam twenty-two feet high; Hunter’s application for the new writ proceeded on the concession that Matthews was right in his denial of Hunter’s title to erect such a dam; and Matthews cannot turn round, and object, that Hunter already has title, and so his second application is supererogatory. The statute authorizes a new writ of ad quod damnum, when the mill owner wishes to raise his dam; and the difference is merely verbal, between an application to raise a dam twenty-two feet high, without notice of an existing privilege to have a dam part of that height, and an application to raise a dam to the height of twenty- *244 two feet, by an addition of four feet upon an existing dam of eighteen feet height. That the applicant is already entitled in part to the privilege he seeks, cannot place him in a worse situation than he would be without such title.
Upon the whole, my opinion is, that the judgment of the circuit superior comí is radically erroneous. There was error also in that of the county court, in declaring that on payment of the damages assessed to Matthews, Hunter should “be seized in fee simple of the land condemned.” The circuit superior court should have corrected that error, and entered judgment, that Hunter should have leave to erect his mills and mill dam pursuant to the inquisition, if there were no other objections to such leave than those which now appear on the record. But it appears that the question presented by the objection to the inquisition, which in the opinion of the circuit superior court warranted the quashing of it, was in its nature preliminary to the introduction of evidence upon the merits, and the decision of that point in Matthews's favour precluded the introduction of evidence, and, consequently, there was no decision of the circuit superior court on the merits. Therefore^ if my opinion were to prevail, this court ought not to give final judgment in the case, but should reverse the judgment of the circuit superior court, and remand the cause to that court, for a hearing there on the merits, with directions, that if upon the merits it should appear proper to grant Hunter leave to raise his dam twenty-two feet, then so much of the judgment of the county court as granted him such leave on paying the damages assessed to Matthews should be affirmed, but so much of it as declared, as a.consequence of the leave granted, that the land condemned should be vested in Hunted' in fee simple, should be reversed.
In conclusion, I shall remark, that if it were conceded, that the circuit superior court was right in quashing *245 the inquisition for the cause assigned, still its judgment ° is wrong, and ought to be reversed, because it did not provide for another writ of ad quod damnum, and for that purpose remand the case to the county court for such new writ, should Hunter think proper to ask one. By the judgment, the case is brought to an abrupt and final end, for the supposed error in executing the writ of ad quod damnum ; and this I think is clearly wrong.
Cabell, J. concurred in the opinion of judge IStanard, and Brooke, ./. in that of judge Allen.
Tucker, P.
I am of opinion, that the objection to the jurors who served upon the inquisition of March 1838 was a valid one, and taken in due time. The objection was, that two of the jurors had been sworn upon a former inquest, and found an inquisition, in relation to the same identical matter, and that they had therefore prejudged the case. The fact is undeniable; and the naked question is presented, whether a juror, who has already on a former trial made up and delivered his opinion upon a matter or matters in issue, is a competent juror to be sworn upon a new jury to try and decide the same matter ? The negative of the proposition is not only obvious upon reason and principle, but it is sustained by all authority. I will take that which, though laid down in an elementary treatise, I regard as entitled to the highest estimation. Challenges (says sir W. Blaclcstone, 3 Comm. 363.) “may be propter affectum for suspicion of bias or partiality. This may be either a principal challenge, or to. the favour. A principal challenge is such, when the cause assigned carries with it, prima facie, evident marks of suspicion of malice or favour : as that a juror is of kin to either party within the ninth degree; that he has been an arbitrator on either side; that he has an interest in the cause—that he has formerly been a juror in the same cause, &c. *246 All these axe principal causes of challenge, which, if true, cannot he overruled, for jurors must be omni ex-ceptione majares.” Here, then, the question of competency is at once decided, against a juror who has formerly been a juror in the same cause. This objection must, of course, in some shape or other, avail every person who is to be bound or affected by the juror’s verdict. In some cases, it may indeed be impossible for the party to make the challenge before the jurors are sworn, he being no party to the proceeding until he is made so by the inquisition itself. Where this is the case, his remedy is to move to quash the inquisition. Thus, in the case of a grand jury: a party indicted is not bound to object to a grand juror for any disqualification before he is sworn; for he is no party to the selection and constitution of the grand inquest of the county. But when he is indicted he becomes a party, and it is competent to him to avail himself of the disqualification. Commonwealth v. Cherry, 2 Virg. Cases 20. 25. Same v. Carter, Id. 318. So in the case of any other inquisition to which he is not a party. When the verdict upon the inquest is found and he thereby becomes a party, it is then competent to him to avail himself of any vital objection to the jury, since before he was made a party, it was not in his power to obtrude himself into the case. These are, I think, obvious principles, and require no authority in support of them. To apply them to the present case. Hunter moved for a writ of ad quod damnum. Two improper jurors were sworn of the inquest. Matthews was no party to the proceeding. No notice had ever been given him, nor was it required; for it could not be known, until the inquisition was found, that he was to be affected by it. He could not, therefore, object before the jurors were sworn; and unless we should decide, that the omission to object is conclusive upon one who is not a party when the inquest is impanneled, even though the ju *247 rors were parties in interest or bribed, we must concede that Matthews had a right to make the objection in this case, at the time he did make it. An inquisition has been found, in which certain damages have been sessed to him, for a certain estimated injury. By this finding he is conclusively bound, unless the inquisition be quashed: 2 Rev. Code, ch. 235. <§, 9. p. 228. However inadequate the damages may be, he can never recover more. Shall he then be absolutely bound by a verdict, forever concluding his interest, even though it should appear, that the whole jury had been bribed, or were the sons and near connexions of his adversary ? I cannot think so.
I am therefore of opinion, that the objection was a valid one, and that it was taken in good time ; and that the judgment of the circuit superior court should be affirmed, with this modification, that the cause be remanded to the county court for further proceedings to be there had.
Judgment affirmed, and costs adjudged to the defendant in error; and ordered, that the cause be remanded to the circuit superior court, and from thence to the county court, with directions to that court, to award Hunter a new writ of ad quod damnum, if he shall apply for the same.